IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JESSICA A. LYONS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:08-0804 |
| | ) | Judge Trauger |
| THE METROPOLITAN GOVERNMENT | ) | |
| OF NASHVILLE AND DAVIDSON COUNTY, | ) | |
| TENNESSEE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

Pending before the court is the motion for summary judgment filed by the defendant (Docket No. 24), to which the plaintiff has responded (Docket No. 33), and the defendant has replied (Docket No. 36). Also pending is the plaintiff's motion to amend the complaint (Docket No. 42). For the reasons discussed herein, the defendant's motion for summary judgment will be granted and the plaintiff's motion to amend the complaint will be denied.

## BACKGROUND

The plaintiff in this case, Jessica Lyons, was employed by the Metro Nashville Public Schools ("MNPS") as Director of the Family Resource Center ("FRC") at Maplewood High School from 2001 until her termination on June 30, 2007.[1]

---

[1]Unless noted otherwise, the facts are drawn from Plaintiff's Response to Defendant's Statement of Undisputed Facts (Docket No. 34), Metropolitan Government's Responses to Plaintiff's Statement of Additional Material Facts (Docket No. 38), and the depositions and other materials submitted by the parties in support thereof.

1

At the beginning of Ms. Lyons' tenure as the Director of the Maplewood High School FRC, the FRC was run directly by MNPS. At some point in late 2006 or early 2007, Ms. Lyons was informed that MNPS would be turning over management of the FRC to a third party, the PENCIL Foundation.[2] In conjunction with this change in the management of the FRC, the PENCIL Foundation was to take over responsibility for hiring the FRC's Director, and the Director position through MNPS—Ms. Lyons's position—would be eliminated. As a result, Ms. Lyons was terminated by MNPS, effective June 30, 2007. Subsequently, the PENCIL Foundation hired another woman, Tasha Cartwright, as Director of the Maplewood High School FRC.

According to Ms. Lyons, after she was informed that her position would be terminated, she inquired as to whether she would be treated as a "displaced employee" pursuant to MNPS policy and placed in another position in accordance with the policy regarding displaced employees established in MNPS' "Support Staff Handbook," which provides that, when a reduction in force is required for "legitimate reasons" such as cut-backs in funding or reorganization, employees with the least seniority are to be laid off first. Ms. Lyons asserts that she should have been considered a displaced employee and, pursuant to the policy, made the Director of the FRC at Bordeaux Elementary School, over which MNPS retained management. Instead, MNPS concluded that Ms. Lyons was not a displaced employee subject to the provisions of the Support Staff Handbook because the elimination of her job was not a result of a reduction

---

[2]Ms. Lyons asserts that she was informed of this by the principal of Maplewood High School in December 2006, while Metro maintains that Ms. Lyons was informed by letter on February 15, 2007. These facts are not necessarily inconsistent and, in any case, the dispute is not material.

2

Case 3:08-cv-00804   Document 44   Filed 08/07/09   Page 2 of 20 PageID #: 491

in force, because her position was a grant-funded, year-to-year position, and because she was a management-level employee not subject to the policy in any event. Consistent with this determination, MNPS retained Ken Jones, a male employee with less seniority than Ms. Lyons, as the Director of the Bordeaux Elementary School FRC.

On June 28, 2007, Ms. Lyons filed an internal grievance regarding MNPS' determination that it would not treat her as a displaced employee, which was submitted to an outside reviewer. On October 15, 2007, the outside reviewer concluded that, although the nature of Ms. Lyons' position, the level of her responsibilities, and the fact that her position was grant-funded all suggested that Ms. Lyons was a management-level employee and thus not subject to the displaced employee policy articulated in the Support Staff Handbook, the fact that her position was not specifically included in a list of exempted positions meant that Ms. Lyons was subject to the provisions of the Handbook, which would have required MNPS to treat her as a displaced employee.[3] However, the outside reviewer nevertheless denied Ms. Lyons' grievance, finding that it was untimely filed, as Ms. Lyons knew, as of February 15, 2007 when MNPS informed her by letter that her position was eliminated and that she would be terminated, that MNPS did not intend to treat her as a displaced employee.

In July 2007, following her termination, and while her grievance was still pending, Ms. Lyons began interviewing for various other jobs with MNPS. According to Ms. Lyons, at the outset of this process, MNPS' Human Resources Department determined that she was eligible

---

[3] MNPS' position that Ms. Lyons was a manager not subject to the policies articulated in the Support Staff Handbook also led it to conclude that she was not entitled to be represented by her union in conjunction with the grievance, a conclusion that the outside reviewer rejected.

3

for hire within MNPS.[4]  Then, on approximately July 4, 2007, Ms. Lyons interviewed for a guidance counselor position at Hillsboro High School, and the principal of that school recommended to the Human Resources Department that Ms. Lyons be hired, as the Human Resources Department was ultimately responsible for approving any hire.  However, Gene Foster, the Director of Human Resources, advised the principal that he could not hire Ms. Lyons.  Mr. Foster has since testified that he told the principal that he could not hire Ms. Lyons because Mr. Foster was uncertain as to whether Ms. Lyons had left her position as Director of the Maplewood High School FRC in good standing.  Additionally, Dr. June Keel, the Assistant Superintendent for Human Resources, testified that she had received information that Ms. Lyons was acting erratically and possibly was mentally unstable and that, as a result, she was unwilling to approve Ms. Lyons' hiring.

Subsequently, on July 24, 2007, Ms. Lyons interviewed for a guidance counselor position at Stratford High School.  On that same day, the police department reported to MNPS that they had received a call from a psychiatrist who warned them that a patient had made threats of violence against Maplewood High School.  The school went into lock-down as a result.  Dr. Keel learned that Ms. Lyons was the source of these threats,[5] and, on July 26, 2007, the Human

---

[4]Although Ms. Lyons makes this claim, the evidence she relies upon reflects merely that, as a general matter, MNPS determined whether an individual was eligible for hire prior to conducting interviews.  The evidence does not reflect that the Human Resources Department made this determination with respect to Ms. Lyons in particular prior to her interviews.  However, drawing all inferences in Ms. Lyons' favor, the court will assume that MNPS did make the specific determination that Ms. Lyons was eligible for hire prior to her interviews.

[5]Ms. Lyons testified that she told her psychiatrist that she "felt like blowing up the school," but claims that she immediately added that she was "not serious."  She acknowledges that she was involuntarily committed following these threats, but notes that she was released at the end of the "minimum 72 hour hold" because her doctor believed the incident to be

4

Resources Department issued a notice stating that Ms. Lyons was not eligible for hire within MNPS. As a result, Ms. Lyons was denied the position at Stratford High School, and the designation that she is ineligible for hire remains in effect.

Also in July 2007, Ms. Lyons filed two charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"). The first, filed on July 5, 2007, alleged gender discrimination based on the fact that, although Ms. Lyons had requested to be "re-assigned" to the position of Director of the Bordeaux Elementary School FRC, this request was denied and a male employee with less seniority, Mr. Jones, remained in that position instead.[6] The second, filed on July 30, 2007, alleged that Ms. Lyons was not hired for the positions at Hillsboro and Stratford High Schools in retaliation for her claims of sex discrimination and on account of disability relating to her involuntary commitment in June 2007.

## ANALYSIS

Ms. Lyons has alleged gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 and violations of her constitutional and statutory rights under 42 U.S.C. § 1983.[7] The defendant has moved for summary judgment with respect to these claims.

---

"exaggerated" and that Ms. Lyons was not a threat.

[6]Ms. Lyons asserts that she informed the defendant of her intention to file a charge with the EEOC in mid-June, prior to actually filing that charge, and thus the defendant was aware of her intention to file the charge before Ms. Lyons interviewed for the guidance counselor position at Hillsboro High School.

[7]Although asserted in her EEOC charge of discrimination, Ms. Lyons did not bring a claim for discrimination on the basis of disability in this lawsuit.

5

**I.     Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail, the moving party must meet the burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).

In determining whether the moving party has met its burden, the court must view the factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). "The court's function is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.'" *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

If the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which she has the burden, however, the moving party is entitled to summary judgment as a matter of law. *See Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir. 1999). To preclude summary judgment, the nonmoving party "must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be

6

evidence on which the jury could reasonably find for the [nonmoving party]." *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 566 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252). If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. *Anderson*, 477 U.S. at 249-52. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v. White*, 190 F.3d 427, 431 (6th Cir. 1999) (citing *Anderson*, 477 U.S. at 247-49).

## II.   Title VII Gender Discrimination Claim

Ms. Lyons asserts that she was subject to gender discrimination to the extent that she was not treated as a displaced employee and transferred to the FRC at Bordeaux Elementary School, while Mr. Jones, a male employee with less seniority than she, remained as the Director of the Bordeaux Elementary School FRC.[8]

Ms. Lyons' claims are analyzed according to the familiar burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, Ms. Lyons must first establish a *prima facie* case of gender discrimination. *Id.* at 802. If she carries that burden, the burden shifts to the defendant, who must present a legitimate, non-discriminatory reason for its actions. *Id.* at 802-03. If the defendant does so, Ms. Lyons must then show that the legitimate, non-discriminatory reason proffered by the defendant was, in fact, merely a pretext for discrimination. *Id.* at 804.

---

[8]Ms. Lyons does not assert that her termination as Director of the Maplewood High School FRC constituted gender discrimination and acknowledges that such a claim would fail, as she was replaced by Tasha Cartwright, a woman. (Docket No. 33 at 8.)

7

To establish a *prima facie* case of gender discrimination, Ms. Lyons must demonstrate that "(1) she is a member of a protected class, (2) she was subjected to an adverse employment action, (3) she was qualified, and (4) she was treated differently than similarly-situated male . . . employees . . . ." *McClain v. Nw. Cmty. Corr. Ctr. Judicial Corr. Bd.*, 440 F.3d 320, 332 (6th Cir. 2006) (citing *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 928 (6th Cir. 1999)); *Peltier v. U.S.*, 388 F.3d 984, 987 (6th Cir. 2004). The defendant does not dispute that Ms. Lyons is a member of a protected class, that she was subjected to an adverse employment action, or that she was qualified for the position of Director of the FRC at Bordeaux Elementary School. (Docket No. 28 at 7.) Instead, the only issue is whether Mr. Jones was similarly-situated to Ms. Lyons.

To be considered similarly-situated, a non-protected employee with whom a plaintiff is compared must be similar to the plaintiff "in all of the relevant aspects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998). While the United States Court of Appeals for the Sixth Circuit has stated that the plaintiff and the non-protected employee "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it," *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992), the Sixth Circuit has since clarified that courts "should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee," *Ercegovich*, 154 F.3d at 352 (discussing *Mitchell*). As such, a plaintiff need not demonstrate exact correlation, but merely that she and the non-protected employee are similar in all of the relevant aspects. *Id.* Moreover,

8

the relevance of whether the plaintiff and the non-protected employee share the same supervisor is determined "on a case-by-case basis and does not depend entirely on whether the two shared the same immediate supervisor" but, rather, whether the "situations were handled by the same 'ultimate decision-maker.'" *Barry v. Noble Metal Processing, Inc.*, 276 F. App'x 477, 481 (6th Cir. 2008) (citing *McMillan v. Castro*, 405 F.3d 405, 414 (6th Cir. 2005)).

The defendant maintains that Ms. Lyons and Mr. Jones are not similarly situated because they worked at different schools and reported to different supervisors—Ms. Lyons to the principal of Maplewood High School and Mr. Jones to the principal of Bordeaux Elementary School. However, as the Sixth Circuit has made clear, reporting to the same supervisor is not a rigid requirement for two employees to be considered similarly situated. Here, although Ms. Lyons and Mr. Jones nominally reported to their respective principals, they were both employees of MNPS within the FRC program and, as the defendant itself has acknowledged, both were subject to the "ultimate supervisory authority" of MNPS' Director of Schools. (Docket No. 35-16 ¶ 5.) In addition, although the defendant further argues that Ms. Lyons and Mr. Jones were not similarly situated because they worked at different educational levels—Ms. Lyons in the high school context and Mr. Jones at an elementary school—there is little indication that this distinction was a relevant one that would render the two not similarly situated.

That does not conclude the analysis, however. The crux of Ms. Lyons' gender discrimination claim is that, upon the elimination of her position—which Ms. Lyons does not attribute to gender discrimination—MNPS terminated her rather than terminating Mr. Jones and transferring her to Mr. Jones' position, which, she asserts, was mandated by the displaced employee policy. MNPS maintains that the displaced employee policy did not apply to Ms.

9

Lyons in the first instance. Thus, it was MNPS' treatment of Ms. Lyons after her position was eliminated and, particularly, its application of the displaced employees policy, that Ms. Lyons alleges constituted gender discrimination. But it was only Ms. Lyons' position, and not also that of Mr. Jones, that was eliminated as a result of the change in management of the Maplewood High School FRC. Thus, the proper inquiry in determining whether Mr. Jones, or, for that matter, any other male employee, was similarly situated to Ms. Lyons is whether MNPS fairly applied the displaced employee policy and made consistent determinations as to whether a particular employee was subject to the policy. As Mr. Jones' position was not eliminated, he is not similarly situated to Ms. Lyons, as MNPS did not have to make any determination as to whether the displaced employee policy applied to him. Moreover, although Ms. Lyons makes the blanket allegation that every other terminated employee "in recent memory" was treated as a displaced employee, regardless of whether the policy applied to them as a technical matter, she has produced no evidence that would permit the court to conclude that any specific male employee was similarly situated to Ms. Lyons.

As Ms. Lyons has not demonstrated that Mr. Jones or any other male employee was similarly situated, she has failed to establish a *prima facie* case of gender discrimination under Title VII.

### III. Title VII Retaliation Claim

Ms. Lyons next asserts that the defendant retaliated against her in violation of Title VII. As with her Title VII gender discrimination claim, Ms. Lyons' retaliation claim is likewise subject to the burden-shifting framework established by *McDonnell-Douglas*. *Dixon v. Gonzalez*, 481 F.3d 324, 333 (6th Cir. 2007).

10

To establish a *prima facie* claim of retaliation under Title VII, Ms. Lyons must demonstrate that (1) she engaged in an activity protected by the statute; (2) the exercise of her protected rights was known to the defendant; (3) the defendant subsequently took an adverse employment action against Ms. Lyons or subjected Ms. Lyons to severe or pervasive retaliatory harassment; and (4) there was a causal connection between Ms. Lyons' protected activity and the adverse employment action. *Morris v. Oldham County Fiscal Ct.*, 201 F.3d 784, 792 (6th Cir. 2000); *see also Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003); *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 463 (6th Cir. 2001). Ms. Lyons claims that MNPS retaliated against her for the grievance she filed internally regarding MNPS' determination not to treat her as a displaced employee and for the two charges of discrimination she filed with the EEOC to the extent that MNPS failed to hire her for the guidance counselor positions at Hillsboro and Stratford High Schools and designated her as ineligible for rehire. The defendant argues that Ms. Lyons has not established the fourth element of a *prima facie* case of retaliation—that a causal connection existed between the alleged protected activities and the adverse employment actions. (Docket No. 28 at 10.)

To establish such a causal connection, the evidence "must be sufficient to raise an inference that the protected activity was the likely reason for the adverse action." *Wade*, 259 F.3d at 463; *see also Abbott*, 348 F.3d at 543 ("To establish the causal connection that the fourth prong requires, the plaintiff must produce sufficient evidence from which one could draw an inference that the employer would not have taken the adverse employment action against the plaintiff had the plaintiff not engaged in activity that Title VII protects."). In support of its argument, the defendant points to Ms. Lyons' deposition testimony. When asked what action on

11

her part motivated the retaliation, Ms. Lyons testified that she was retaliated against "for the OCR complaint" (Docket No. 24-1 at 168-69), a reference to a complaint that her husband filed with the Office of Civil Rights ("OCR") in an effort to obtain educational services from the school district on behalf of the Lyons' son, who suffers from Attention Deficit Hyperactivity Disorder. That is, Ms. Lyons expressly testified that the adverse employment actions she claims to have suffered were retaliation for the OCR complaint her husband filed regarding educational services for their son, rather than for her grievance or EEOC charges alleging gender discrimination.

However, even if Ms. Lyons had established a *prima facie* case of retaliation on the basis of her internal grievance, or EEOC charges, or the OCR complaint, her claims fail, as the defendant has articulated a legitimate, non-discriminatory reason for its actions, and Ms. Lyons has failed to demonstrate that this reason was merely a pretext for discrimination.[9] First, with respect to the guidance counselor position at Hillsboro High School, Dr. Keel, the Assistant Superintendent of Human Resources, testified that Ms. Lyons was not hired for that position because Dr. Keel had learned from Benny Goolsby, Ms. Lyons' union representative, that Ms. Lyons had been acting erratically and might be mentally unstable.[10] (Docket No. 24-2 at 39, 41.)

---

[9]In its brief in support of its motion for summary judgment, the defendant only explicitly addresses the causation element of a *prima facie* case of retaliation, without reaching the second and third steps under the *McDonnell-Douglas* burden-shifting framework, although many of its arguments implicitly address the second and third steps of that test, and Ms. Lyons' response explicitly addresses the question of pretext.

[10]Additionally, Mr. Foster, the Director of Human Resources, testified that, although he could not recall "the specifics," he informed the principal of Hillsboro High School that the principal could not hire Ms. Lyons because Mr. Foster "was not 100 percent sure [Ms. Lyons] had left [Maplewood High School] in good standing." (Docket No. 35-22 at 24-26.)

12

Ms. Lyons attempts to discredit Dr. Keel's testimony, arguing that there was no third party present when Mr. Goolsby made these statements, that Dr. Keel did not make a written record or conduct a further investigation into Mr. Goolsby's claims, and that Dr. Keel could not recall precisely when Mr. Goolsby made these statements. Ms. Lyons further notes that Mr. Goolsby continued to advocate for Ms. Lyons in his role as union representative during the same period that he made the statements to Dr. Keel regarding Ms. Lyons' erratic behavior. Other than casting aspersions, however, Ms. Lyons has not produced a single shred of evidence that contradicts either Dr. Keel's testimony that Mr. Goolsby did, in fact, make the statements that Dr. Keel attributes to him or that those statements motivated the decision not to hire Ms. Lyons for the guidance counselor position at Hillsboro High School.

In addition, Dr. Keel testified that Ms. Lyons was not hired for the guidance counselor position at Stratford High School and was designated as ineligible for hire because Ms. Lyons was responsible for making threats against Maplewood High School that were considered serious enough by Ms. Lyons' psychiatrist, the police department, and the school administration to cause the school to go into lock-down. (Docket No. 24-2 at 38-39.) Although Ms. Lyons now claims that her threats were "misinterpreted," "exaggerated," and "not serious," she does not deny that she made those statements and was involuntarily committed as a result. (Docket No. 33 at 7, 13; Docket No. 34 ¶¶ 5-7.) Moreover, she has not introduced any evidence to corroborate her own testimony that the statements were misinterpreted or did not represent a genuine threat to the school.

Ms. Lyons also argues that the defendant acted unreasonably by not investigating the nature of the threats. She claims that the defendant investigated similar threats made by

13

employees, but treated her differently by not affording her the same "benefit of the doubt." She claims that this disparate treatment provides evidence that the defendant's stated reason for not hiring her for the guidance counselor position at Stratford High School and for designating her as ineligible for hire was merely a pretext for discrimination. However, Ms. Lyons' argument is based on an inaccurate reading of Dr. Keel's deposition, in which Dr. Keel testified that she did not investigate Ms. Lyons' threats further because Ms. Lyons was not a current employee at the time she made the threats. (Docket No. 38-1 at 49.) Moreover, Dr. Keel testified that she had never before been informed by the police department that an individual had made threats against the school, as was the case with Ms. Lyons. (*Id.* at 66.) Thus, the defendant's alleged failure to investigate the threats against Maplewood High School—threats that Ms. Lyons undisputedly made—and its alleged disparate treatment of Ms. Lyons with respect to those threats finds no basis in evidence and does not establish pretext.

Therefore, Ms. Lyons' retaliation claim must fail because, even if she did establish a *prima facie* case of retaliation, Ms. Lyons' threats against the school unquestionably constitute a legitimate, non-discriminatory reason for the defendant's actions, and Ms. Lyons has adduced no evidence that this reason was merely a pretext for discriminatory retaliation in violation of Title VII.

### IV.    § 1983 Claim

Finally, Ms. Lyons asserts that the defendant is liable, pursuant to 42 U.S.C. § 1983, for violating her rights under the First Amendment to the United States Constitution, the Rehabilitation Act of 1973, and the Americans with Disabilities Act, by retaliating against her because her husband filed an OCR complaint regarding educational services for their son. The

14

defendant asserts that this claim is barred by the statute of limitations that applies to claims brought under § 1983. "In all actions brought under § 1983 alleging a violation of civil rights or personal injuries, the state statute of limitations governing actions for personal injuries is applied." *Berndt v. Tennessee*, 796 F.2d 879, 883 (6th Cir. 1986) (citing *Wilson v. Garcia*, 471 U.S. 261 (1985)). Under Tennessee law, that statute of limitations is one year. *See id.*; Tenn. Code Ann. § 28-3-104(a).

Ms. Lyons alleges that her husband filed a complaint with the OCR regarding accommodations for their son's disability in 2005, and that, in June 2006, OCR issued a ruling finding that MNPS failed to properly review and implement an educational plan for their son and that MNPS was obligated to implement a comprehensive resolution agreement. According to Ms. Lyons, she received notification in December 2006, six months after this ruling, that MNPS was eliminating her position as a result of its decision to transfer management of the FRC to the PENCIL Foundation. In her Complaint, filed on August 21, 2008, Ms. Lyons alleges that the decision to transfer management of the FRC and eliminate her position was made in retaliation for the OCR complaint filed by her husband six months prior.[11] Ms. Lyons now additionally claims, in her response to the defendant's motion for summary judgment and in her motion to amend the complaint, that her § 1983 claim includes not only the allegation that the elimination of her position constituted retaliation for the OCR complaint, but also the allegation that the defendant's refusal to hire her for the two guidance counselor positions and its determination that she was ineligible for hire constituted retaliation for that complaint.

---

[11]In connection with this claim, Ms. Lyons makes a variety of unfounded allegations attacking the justification and reasonableness of MNPS' decision to turn management of the Maplewood High School FRC over to the PENCIL Foundation.

15

The Supreme Court has held that, in determining when the statute of limitations begins to run, "the proper focus is upon the time of the *discriminatory acts*, not upon the time at which the *consequences* of the acts became most painful." *Del. State College v. Ricks*, 449 U.S. 250, 258 (1980) (quotation and citation omitted; emphasis in the original). Thus, in the employment context, the limitations period begins to run when an employer makes a decision to terminate and notifies the employee, and not when the termination becomes effective. *Id.* at 259. Moreover, "the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods." *Id.* at 261. Applying that rule to this case, Ms. Lyons' claim stemming from the elimination of her position is time-barred, as she was notified of the elimination of the position and her termination in December 2006 or, at the latest, on February 15, 2007—in any case, more than a year before she filed the Complaint in this action—and the pendency of her grievance did not toll the statute of limitations.

Ms. Lyons further argues that the defendant's actions—specifically, its refusal to treat her as a displaced employee, denial of union representation in connection with her grievance, refusal to hire her for the two guidance counselor positions, and designation that she was ineligible for hire—represent a continuing violation rendering her claim timely. The continuing violation doctrine permits a plaintiff to recover for injuries that would otherwise be time-barred if she alleges a "prior discriminatory activity that continues into the present" or a "long-standing and demonstrable policy of discrimination against a class of which the plaintiff is a member." *Baar v. Jefferson County Bd. of Educ.*, 311 F. App'x 817, 823-24 (6th Cir. 2009) (citing *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003) and *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003)). A continuing violation exists where (1) the defendant's wrongful conduct continued

16

after the event that began the pattern of wrongful conduct; (2) the plaintiff's injury continued to accrue after the initial event; and (3) further injury to the plaintiff would have been avoided had the defendant ceased its wrongful conduct. *Tolbert v. State of Ohio Dep't of Transp.*, 172 F.3d 934, 940 (6th Cir. 1999). However, the Sixth Circuit has noted that, "just because discrete claims are related to one another—in terms of the parties involved, the nature of the underlying conflict and the theory of relief—does not mean that the limitations period is suspended for all of the claims so long as just one of them occurred within the limitations period." *Baar*, 311 F. App'x at 824.

The allegedly retaliatory incidents of which Ms. Lyons complains reflect discrete acts rather than a prior discriminatory activity that continues into the present or a long-standing and demonstrable policy of discrimination on the defendant's part and, thus, the continuing violations doctrine does not render Ms. Lyons' claims timely. Moreover, even if certain of these incidents had some continuing effect within the limitations period—to the extent that the defendant denied her union representation in connection with her grievance, which was not resolved until October 15, 2007, and has refused to reinstate her eligibility for hire since it made that determination on July 26, 2007—these do not constitute a continuing violation but merely the continued effect of a previous discriminatory act and do not render her claim timely.

Ms. Lyons argues, in the alternative, that the statute of limitations should be equitably tolled to render her § 1983 claim timely. Equitable tolling is available where a plaintiff demonstrates "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Lawrence v. Florida*, 549 U.S. 327, 336 (2007) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Equitable tolling is

17

available only where the plaintiff's failure to assert her claim in a timely fashion "unavoidably arose from circumstances beyond that litigant's control." *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560-61 (6th Cir. 2000). In determining whether equitable tolling is available, courts may consider (1) whether the plaintiff had actual notice of the filing requirements; (2) whether the plaintiff had constructive notice of the filing requirements; (3) whether the plaintiff diligently pursued her rights; (4) whether the defendant is prejudiced; and (5) whether the plaintiff's ignorance of the notice requirement was reasonable. *McSwain v. Davis*, 287 F. App'x 450, 455 (6th Cir. 2008).

Here, Ms. Lyons argues that she failed to assert her claim in a timely fashion because she did not have actual or constructive knowledge of the filing requirements until she retained counsel in August 2008, after the EEOC issued its notice of her right to sue with respect to her Title VII claims. She asserts that she was not informed, by either the EEOC or by her union representative in conjunction with her internal grievance, of the one-year statute of limitations governing her § 1983 claim. This argument, however, is a red herring, as neither her EEOC charge nor her grievance involved her claim under § 1983 or even the same factual predicate as her § 1983 claim, which is premised on retaliation for the OCR complaint regarding educational services for her son, whereas the EEOC charge and grievance involved gender discrimination and retaliation in violation of Title VII. Neither the EEOC nor Ms. Lyons' union representative would have had reason to notify Ms. Lyons of the statute of limitations regarding a claim based on different facts and asserting a different legal theory for recovery. Thus, this is not a case, as Ms. Lyons intimates, where the statute of limitations should be equitably tolled on account of the oversight of a third party in notifying her of the relevant filing deadline. Indeed, while she

18

argues that she has pursued her Title VII claim vigorously and that tolling the statute of limitations would not prejudice the defendant, the fact remains that Ms. Lyons points to no extraordinary circumstances that would justify the equitable tolling of the statute of limitations.

Finally, the court briefly addresses Ms. Lyons' motion to amend the complaint. Under the Federal Rules of Civil Procedure, leave to amend a pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). However, a court need not grant leave to amend where there is a showing of undue delay, bad faith or dilatory motive on the part of the moving party, undue prejudice to the non-moving party, or futility of the proposed amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). Ms. Lyons seeks to amend the complaint to clarify her allegation that the defendant retaliated against her not only by eliminating her position but also by refusing to hire her for the two guidance counselor positions and by designating her as ineligible for hire. However, even if the court were to consider those incidents as separate factual bases for her § 1983 claim, her claim is nonetheless time-barred, because she was rejected for the guidance counselor positions and designated as ineligible for hire in July 2007, more than a year before she filed suit, and because neither the continuing violations doctrine nor equitable tolling are available to save her claim for the reasons stated above.

As the proposed amendment of the complaint would be futile, Ms. Lyons' motion to amend will be denied, and the defendant will be granted summary judgment with respect to her § 1983 claim.

19

## CONCLUSION

For the reasons discussed herein, the motion for summary judgment filed by the defendant, Metropolitan Government of Nashville and Davidson County, will be granted and the motion to amend the complaint filed by the plaintiff, Jessica A. Lyons, will be denied.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge